IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
SEP 08 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

| | |
|---|---|
| LEONARD TYLER, JR., *Plaintiff,* | CASE NO. 5:26-cv-00281 |
| v. | CHIEF DISTRICT JUDGE SARA LIOI |
| UNITED STATES OF AMERICA, *et al.*, *Defendants.* | **PLAINTIFF LEONARD TYLER, JR.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

COMES NOW Plaintiff Leonard Tyler, Jr. ("Tyler"), proceeding *pro se*, and respectfully submits this Response in Opposition to Defendants' Motion to Dismiss. In support thereof, Tyler states as follows:

## I. INTRODUCTION

The Government's motion presents this case as a routine challenge to a completed administrative forfeiture by a claimant who received notice but failed to file a valid claim. The Government's own evidence demonstrates that this case is anything but routine.

Leonard Tyler, Jr. timely caused a claim concerning the $32,480 seized by the Drug Enforcement Administration ("DEA") to be submitted on his behalf. DEA received that claim on December 23, 2021. Rather than reject the submission as defective or notify Tyler that any defect required correction, DEA accepted the claim, suspended the administrative forfeiture process, and referred the matter to the United States Attorney's Office for the Northern District of Ohio for judicial forfeiture proceedings. Indeed, DEA expressly notified Tyler that "[t]he claim has been accepted and this matter has been referred to the judicial district noted above." Gov't Ex. A, Regis Decl. ¶ 4(d)–(e), Ex. 5.

DEA's acceptance and referral of the claim carried statutory consequences. Under the Civil Asset Forfeiture Reform Act ("CAFRA"), once a claim is filed, the Government has ninety days either to file a judicial forfeiture complaint or return the property, absent an extension authorized by statute. 18 U.S.C. § 983(a)(3)(A). If it does neither, Congress directed that the Government "shall promptly release the property" and "may not take any further action to effect the civil forfeiture of such property." 18 U.S.C. § 983(a)(3)(B).

The Government did not file a judicial forfeiture complaint within ninety days. It did not return Tyler's money within ninety days. Instead, the matter remained with the United States Attorney's Office for more than three years. In April 2025, the United States Attorney finally advised DEA that it would not pursue forfeiture, and DEA informed Tyler's attorney that the $32,480 would be returned.

Only then did DEA reverse course. After having treated Tyler's submission as a claim for more than three years, DEA concluded in May 2025 that the claim had been defective from the beginning because another individual had signed Tyler's name at his direction. DEA rescinded its decision to return the property and administratively forfeited the currency as though no claim had ever been filed.

CAFRA does not authorize that result.

The Government relies heavily upon 18 U.S.C. § 983(e) and argues that, because Tyler admittedly received notice of the original seizure, this Court lacks jurisdiction. But Tyler is not seeking relief because DEA failed to provide notice. His challenge concerns what occurred after DEA received and accepted his claim: the Government's failure to institute judicial forfeiture within CAFRA's mandatory ninety-day period and DEA's later attempt to revive an administrative

forfeiture proceeding that had already been stopped by the filing and acceptance of the claim.

The Government is therefore asking the Court to treat DEA's 2025 determination as retroactively nullifying more than three years of agency action, together with the statutory consequences flowing from the Government's failure to comply with § 983(a)(3). Neither CAFRA nor the implementing regulations compel that conclusion. To the contrary, the regulations specifically address defective claims and permit the seizing agency to notify the claimant and provide a reasonable opportunity to cure. 28 C.F.R. § 8.10(g). DEA did not follow that procedure when Tyler's claim was received. It accepted the claim and referred it for judicial forfeiture.

At a minimum, those undisputed facts prevent dismissal for lack of subject-matter jurisdiction on the Government's theory that no cognizable claim was ever filed. The motion should be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2021, federal agents arrested Tyler and seized $32,480.00 in United States currency from the vehicle he was operating. The Cleveland DEA District Office thereafter prepared a forfeiture report concerning the currency, and DEA accepted the matter for administrative forfeiture following legal review of the seizure. See Gov't Ex. A, Declaration of Alycia P. Regis ("Regis Decl.") ¶ 4(a).

On November 22, 2021, DEA mailed Tyler written notice of the seizure and initiation of administrative forfeiture proceedings. See Regis Decl. ¶ 4(b), Ex. 1. The notice advised Tyler that, if he wished to contest the forfeiture in United States District Court, he was required to submit a claim to DEA. The notice further advised that a timely claim would stop the administrative forfeiture proceeding and that DEA would forward the matter to the United States Attorney's Office for further

proceedings. *Id.*, Ex. 1.

On December 23, 2021, before the deadline stated in DEA's notice, DEA received a claim concerning the $32,480.00. See Regis Decl. ¶ 4(d). The claim identified Tyler as the claimant, specifically identified the seized currency, stated Tyler's claimed interest in the property, and contained Tyler's name on the signature line. *Id.*, Ex. 4. DEA acknowledges that the claim was timely received. *Id.*

The claim form had been completed by Eris Tye at Tyler's direction while Tyler was incarcerated. Tyler has acknowledged that Tye completed the claim form, signed Tyler's name at his direction, and returned the claim to DEA on his behalf. Compl. ¶ 9. At the time DEA received the claim, however, nothing appearing on the face of the submission indicated that another person had signed Tyler's name. See Regis Decl. ¶ 4(d).

DEA did not reject the submission as defective. Nor did DEA notify Tyler that the claim required correction or provide him an opportunity to cure any defect. Instead, on January 13, 2022, DEA sent Tyler written notice acknowledging receipt of the claim and advising that the matter had been referred to the United States Attorney's Office for the Northern District of Ohio. See Regis Decl. ¶ 4(e), Ex. 5. DEA correspondence expressly informed Tyler: "The claim has been accepted and this matter has been referred to the judicial district noted above." *Id.*, Ex. 5.

On February 14, 2022, DEA received a letter of representation from attorney Michael B. Bowler concerning Tyler and the seized property. Regis Decl. ¶ 4(f). The matter thereafter remained with the United States Attorney's Office for more than three years.

On or about April 8, 2025, the United States Attorney's Office for the Northern District of Ohio notified DEA that it would not pursue forfeiture of the $32,480.00. See Regis Decl. ¶ 4(g), Ex.

7. Following that decision, DEA sent Tyler's attorney an April 28, 2025 letter advising that the property would be returned and providing instructions for completing the necessary payment information. See Regis Decl. ¶ 4(h), Ex. 8.

Only after the United States Attorney declined forfeiture and DEA had begun the process of returning the property did DEA determine that Tyler had not personally signed the December 2021 claim. On May 5, 2025, DEA notified Tyler that it considered the claim invalid because it had been signed by a third party and rescinded its earlier decision to return the currency. See Regis Decl. ¶ 4(i), Ex. 10.

Also on May 5, 2025, DEA administratively forfeited the $32,480.00 to the United States on the ground that no properly executed claim had been received before expiration of the claim deadline. See Regis Decl. ¶ 4(j), Ex. 13. Thus, more than three years after DEA had accepted Tyler's claim and referred the matter for judicial forfeiture, DEA treated that claim as though it had never been filed and completed an administrative forfeiture of the currency.

Tyler promptly objected. On May 27, 2025, DEA received a handwritten letter from Tyler advising that he intended to challenge the forfeiture in court. See Regis Decl. ¶ 4(k), Ex. 14. DEA responded on June 5, 2025, maintaining that the currency had been administratively forfeited because a third party had signed Tyler's claim. See Regis Decl. ¶ 4(l), Ex. 15.

Tyler ultimately filed the present action on February 4, 2026, challenging DEA's forfeiture of the $32,480.00. See Regis Decl. ¶ 4(m). Defendants thereafter moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Tyler never submitted a valid claim, that the subsequent administrative forfeiture was therefore lawful, and that 18 U.S.C. § 983(e) provides Tyler's exclusive avenue for relief. See Defs.' Mem. in Supp. of Mot. to Dismiss at 7–10.

## III. STANDARD OF REVIEW

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion may present either a facial attack on the sufficiency of the jurisdictional allegations or a factual attack on the actual existence of jurisdiction. See *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Gentek Building Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Because the Government relies upon Tyler's Complaint as well as evidence outside the pleadings, including the Regis Declaration and its exhibits, the motion presents, at least in part, a factual challenge to jurisdiction. See Defs.' Mem. at 4–5.

Ordinarily, when a defendant raises a factual challenge under Rule 12(b)(1), the Court may consider evidence outside the pleadings, weigh competing evidence, and determine whether the factual predicates for subject-matter jurisdiction exist. Ritchie, 15 F.3d at 598. The plaintiff bears the burden of establishing jurisdiction. *Id.*; *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). The Sixth Circuit has more recently reiterated that, in a factual attack, a district court may consider affidavits and documents and resolve jurisdictional facts. See *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th Cir. 2022).

That authority, however, does not permit a Rule 12(b)(1) motion to be used to decide the merits of a federal claim merely by characterizing the merits dispute as jurisdictional. The Sixth Circuit has cautioned that where the disputed jurisdictional issue is intertwined with the merits of the plaintiff's federal claim, the court should not resolve the merits through the more permissive procedures applicable to a factual Rule 12(b)(1) motion. See *Gentek*, 491 F.3d at 330. Where the plaintiff asserts a substantial federal claim, subject-matter jurisdiction ordinarily exists even though

the claim may ultimately fail on the merits. *Id.*

That distinction is important here. Tyler does not ask this Court simply to reconsider the merits of an ordinary, completed administrative forfeiture. His Complaint challenges whether DEA possessed statutory authority to complete an administrative forfeiture after it had timely received and accepted Tyler's claim, referred the matter for judicial forfeiture, and the Government thereafter failed to institute judicial forfeiture within the time prescribed by 18 U.S.C. § 983(a)(3). DEA's own declaration establishes that the claim was received on December 23, 2021, was accepted and referred to the United States Attorney, and remained there until the United States Attorney declined forfeiture in April 2025.

Thus, the Government's assertion that Tyler "never" filed a claim cannot be treated merely as an undisputed jurisdictional fact. Whether DEA could retroactively disregard a claim it had accepted and referred, and thereafter administratively forfeit the property notwithstanding § 983(a)(3), goes directly to the statutory legality of DEA's actions and to the merits of Tyler's challenge.

Moreover, because Tyler is proceeding *pro se,* his pleadings must be liberally construed and held to a less stringent standard than pleadings drafted by attorneys. See *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); see also *Heyward v. Cooper*, 88 F.4th 648, 654 (6th Cir. 2023); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Accordingly, the Court should consider the substance of Tyler's allegations and the relief sought rather than dismiss the action merely because his *pro se* Complaint may not have precisely identified every statutory or jurisdictional basis for relief. For purposes of the present motion, the dispositive question is therefore not simply whether Tyler received the original notice of seizure. The Court

must determine whether the Government has established that, notwithstanding DEA's timely receipt and express acceptance of Tyler's claim and its referral for judicial forfeiture, DEA retained statutory authority more than three years later to treat the claim as nonexistent and complete an administrative forfeiture.

## IV. ARGUMENT

### A. DEA's Acceptance of Tyler's Timely Claim Triggered CAFRA's Ninety-Day Requirement Under 18 U.S.C. § 983(a)(3)

CAFRA establishes a clear sequence when property is seized for administrative forfeiture and an interested person elects to contest the forfeiture in federal court. A claimant may file a claim with the seizing agency identifying the property, stating the claimant's interest in the property, and making the claim under oath, subject to penalty of perjury. See 18 U.S.C. § 983(a)(2)(A), (C). Once a timely and qualifying claim is filed, the administrative process stops and the Government must proceed judicially. The Sixth Circuit has summarized the statutory scheme in those terms: if a property owner files a timely claim, "the government must then file a complaint for forfeiture in district court within 90 days." *Matthews v. Drug Enf't Admin.*, 629 F. App'x 723, 725 (6th Cir. 2015).

Section 983(a)(3)(A) provides that, not later than ninety days after a claim has been filed, the Government must either file a judicial forfeiture complaint or return the property pending the filing of such a complaint, unless the district court grants an extension for good cause or upon agreement of the parties. Congress also expressly prescribed the consequence of failing to comply. If the Government does neither, it "shall promptly release the property" and "may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." 18 U.S.C. § 983(a)(3)(B).

DEA's own notice to Tyler described precisely that process. It advised him that "[a] timely claim stops the administrative forfeiture proceeding" and that the seizing agency would forward the timely claim to the United States Attorney's Office for further proceedings. See Gov't Ex. A, Ex. 1.

That is precisely what occurred here. DEA admits that it received Tyler's claim on December 23, 2021, before expiration of the claim deadline. See Regis Decl. ¶ 4(d). DEA did not reject the submission as defective. Instead, on January 13, 2022, DEA acknowledged its receipt, accepted the claim, and referred the matter to the United States Attorney's Office for the Northern District of Ohio. See Regis Decl. ¶ 4(e). Most significantly, DEA expressly advised Tyler that "[t]he claim has been accepted and this matter has been referred to the judicial district noted above." Gov't Ex. A, Ex. 5.

DEA's conduct was therefore consistent with its own regulation governing the effect of a qualifying claim. Under 28 C.F.R. § 8.10(e), "[u]pon receipt of a claim that meets the requirements of paragraphs (a) and (b) of this section, the seizing agency shall suspend the administrative forfeiture proceeding and transmit the claim with a description of the property and a complete statement of the facts and circumstances surrounding the seizure to the appropriate U.S. Attorney for commencement of judicial forfeiture proceedings." DEA did exactly that.

The Government nevertheless now asks the Court to hold that the December 2021 claim legally never existed because Tyler later acknowledged that Eris Tye signed his name to the claim form at his direction. But that contention cannot be considered in isolation from what DEA itself did after receiving the claim. DEA possessed the claim form, reviewed it, accepted it, suspended the administrative process, and referred the matter for judicial forfeiture. The Government then retained

the matter on that track for more than three years.

Nothing in the Government's submission indicates that a judicial forfeiture complaint was filed within ninety days after DEA received and accepted Tyler's claim. Nor does the Government contend that it obtained a judicial extension of the ninety-day period under § 983(a)(3)(A), or that Tyler agreed to such an extension. Instead, the Regis Declaration establishes that the United States Attorney's Office retained the matter until approximately April 8, 2025, when it advised DEA that it would not pursue forfeiture. See Regis Decl. ¶ 4(g).

At that point, DEA initially took steps consistent with CAFRA's return requirement: it began the process of returning the property. On April 28, 2025, DEA informed Tyler's attorney that the $32,480 would be returned and provided instructions for accomplishing the return. *Id.* ¶ 4(h).

Only after that decision did DEA attempt to undo the consequences of its earlier acceptance of Tyler's claim. On May 5, 2025—more than three years after receiving and accepting the claim—DEA declared the claim invalid because it had been signed by Tye, rescinded its return letter, and administratively forfeited the currency. See Regis Decl. ¶¶ 4(i)–(j).

CAFRA does not expressly authorize an agency to avoid § 983(a)(3)'s mandatory deadline by retroactively declaring that an accepted and referred claim never existed after the Government has failed for years to institute judicial forfeiture. To the contrary, Congress used mandatory language: once the ninety-day requirement applies and the Government neither files the required complaint nor returns the property, the Government "shall promptly release the property" and "may not take any further action to effect the civil forfeiture" based upon the same underlying offense. See 18 U.S.C. § 983(a)(3)(B).

The statutory structure confirms that Congress did not merely establish an internal processing target for the Government. It imposed a deadline and expressly prohibited further civil-forfeiture action when that deadline is missed. Courts construing § 983(a)(3) have recognized that consequence. See, e.g., *Langbord v. U.S. Dep't of Treasury*, 832 F.3d 170, 181–82 (3d Cir. 2016) (en banc) (discussing CAFRA's ninety-day deadline and the statutory consequences that follow once a qualifying claim is filed).

This is also why the Government's reliance on the cases requiring strict compliance with CAFRA's claim requirements does not resolve the present controversy. Tyler does not contend that the verification requirement is meaningless. The issue is what legal consequences follow where the agency itself timely receives the submission, affirmatively accepts it as a claim, invokes the regulatory procedure applicable to accepted claims, refers it to the United States Attorney for judicial forfeiture, and then allows § 983(a)(3)'s deadline to expire.

Importantly, DEA's own regulation separately addresses otherwise timely but defective claims. Under 28 C.F.R. § 8.10(g), when an otherwise timely claim is defective, the agency may notify the claimant of the defect and provide a reasonable opportunity to cure. DEA did not do that in December 2021 or January 2022. Instead, it treated Tyler's submission as sufficient to terminate the administrative forfeiture track and begin the judicial-forfeiture process.

The Government should not be permitted, years later, to convert its own failure to identify or seek correction of an alleged defect into authority to restart an administrative forfeiture that CAFRA had already halted. Accepting that theory would permit an agency to avoid § 983(a)(3)'s ninety-day limitation whenever it later discovers some defect in a claim it had previously accepted, even after the Government failed to pursue judicial forfeiture within the time Congress prescribed.

At minimum, that is not a basis for dismissal under Rule 12(b)(1). The Government's own evidence demonstrates that Tyler timely submitted a claim, DEA expressly accepted it, DEA referred it for judicial forfeiture, and no judicial forfeiture complaint was filed within ninety days. Whether DEA could legally undo those consequences more than three years later is the central statutory question in this action—not a jurisdictional fact that can simply be assumed in the Government's favor.

For those reasons, the Government has not established, at this stage, that DEA retained authority under CAFRA to administratively forfeit Tyler's $32,480 in May 2025.

### B. <u>DEA Could Not Retroactively Treat Tyler's Accepted Claim as a Nullity After the Government Failed to Comply With § 983(a)(3)</u>

The Government's present theory depends upon treating Tyler's December 2021 submission as though it had never existed. According to Defendants, because Eris Tye signed Tyler's name to the claim form at Tyler's direction, the submission was legally void from inception, DEA's January 2022 acceptance and referral had no statutory consequence, and DEA remained free more than three years later to complete an administrative forfeiture. See Defs.' Mem. at 7–9.

That position overlooks both DEA's own regulations and the actual course of the forfeiture proceeding.

The governing regulation distinguishes between a claim that satisfies the regulatory requirements and an otherwise timely claim that DEA considers defective. Under 28 C.F.R. § 8.10(e), when DEA receives a claim that satisfies the filing and content requirements, the agency must either return the property or suspend the administrative forfeiture and promptly transmit the claim to the appropriate United States Attorney for commencement of judicial forfeiture proceedings.

See 28 C.F.R. § 8.10(e).

That is precisely what DEA did here. DEA received Tyler's claim on December 23, 2021, expressly acknowledged it, and advised Tyler that "[t]he claim has been accepted and this matter has been referred to the judicial district noted above." Regis Decl. ¶¶ 4(d)–(e), Ex. 5.

The regulations separately address otherwise timely claims that the agency determines are defective. Section 8.10(g) provides that when an otherwise timely claim does not meet the requirements of § 8.10(b), the agency may notify the claimant of that determination and allow a reasonable time to cure the defect. If the defect is not timely cured after notice and an opportunity to correct it, § 8.10(g) permits the agency to treat the claim as void and proceed accordingly.

DEA did not follow that course in 2021 or 2022. It did not tell Tyler that the signature rendered the claim defective. It did not provide him an opportunity to cure. It did not declare the claim void. Instead, DEA treated the submission as satisfying the claim requirements and took the very action § 8.10(e) directs an agency to take upon receipt of a qualifying claim: it suspended the administrative process and referred the matter to the United States Attorney.

That distinction is critical because CAFRA attaches a mandatory consequence to the filing of a claim. Section 983(a)(3) requires the Government, within ninety days, either to file a judicial forfeiture complaint or return the property, absent an authorized extension. If the Government does neither, it must promptly release the property and may not take further action to effect the civil forfeiture based upon the same underlying offense. See 18 U.S.C. § 983(a)(3)(A)–(B).

The Fifth Circuit's decision in *Nwaorie v. United States*, No. 19-20706, 2023 WL 3034261 (5th Cir. Apr. 21, 2023), although persuasive rather than controlling, illustrates the operation of § 983(a)(3)'s deadline. There, the claimant invoked CAFRA's judicial-forfeiture process, and the

Government did not timely commence a judicial forfeiture action. In describing CAFRA's statutory scheme, the Fifth Circuit explained that when the Government does not timely commence judicial forfeiture after the filing of a proper claim, § 983(a)(3)(B) requires prompt release of the property and prohibits further action to effect civil forfeiture based on the same offense. *Id.* at *2–3.

Tyler's case presents an even more troubling procedural sequence. DEA did not merely receive a submission and remain silent about its status. It affirmatively accepted Tyler's claim and referred it for judicial forfeiture. The matter then remained with the United States Attorney's Office until approximately April 8, 2025, when that office advised DEA that it would not pursue forfeiture. See Regis Decl. ¶¶ 4(e)–(g). DEA thereafter notified Tyler's attorney that the property would be returned. *Id.* ¶ 4(h).

Only after that process had run its course did DEA identify the signature issue and attempt to return to the administrative-forfeiture track. The agency's May 5, 2025 letter did not identify a defect while there was still time for Tyler to cure it. Instead, DEA used the defect more than three years later to erase its earlier acceptance of the claim and to justify an administrative forfeiture that otherwise could not have occurred once the judicial-forfeiture process had been triggered.

Nothing in § 8.10(g) expressly authorizes an agency to retroactively invalidate an accepted and referred claim after the statutory consequences of § 983(a)(3) have attached. To the contrary, the structure of the regulation contemplates that defects will be addressed when the agency determines that an otherwise timely submission does not satisfy the claim requirements. The regulation then gives the agency the option to notify the claimant and allow a reasonable period for cure.

The Government's proposed construction would substantially weaken CAFRA's ninety-day limitation. Under its theory, an agency could accept a claim, transmit it for judicial forfeiture, allow

the statutory deadline to expire, and then avoid § 983(a)(3)(B) simply by identifying years later some technical defect in the original submission. That would allow the Government itself to determine retroactively whether the statutory deadline ever began to run, even after the claimant and the prosecuting office had been told that the matter was proceeding judicially.

CAFRA's text does not support such an open-ended power. Section 983(a)(3)(B) states in mandatory terms that when the Government fails to commence judicial forfeiture within the prescribed period, the property must be released and the Government may not take further action to effect civil forfeiture based upon the same offense. DOJ guidance likewise recognizes the importance of complying with CAFRA's ninety-day filing deadline once a claim has been referred for judicial forfeiture.

Nor does Tyler's position require the Court to disregard CAFRA's verification requirement. Section 983(a)(2)(C)(iii) and § 8.10(b)(3) plainly require a claim to be made under oath by the claimant. Tyler's point is different: DEA itself possessed the allegedly defective document, treated it as sufficient, accepted the claim, invoked § 8.10(e), and initiated the judicial-forfeiture process. The Government cannot simply assume, for purposes of a Rule 12(b)(1) dismissal, that its later determination automatically erased all legal consequences of those earlier actions.

The Government relies upon cases emphasizing strict compliance with the statutory claim requirements, including *United States v. 0.40401694 Bitcoin Seized from Binance User ID 36895141*, No. 25-5611, 2026 WL 228831 (6th Cir. Jan. 28, 2026), and *United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342 (6th Cir. 2017). See Defs.' Mem. at 6, 8. Those decisions underscore the importance of compliance with verification requirements. They do not, however, answer the distinct question presented here: whether DEA may retroactively nullify an already accepted and

referred claim after the Government has failed for years to file the judicial forfeiture action required by § 983(a)(3).

That question should not be resolved at the Rule 12(b)(1) stage by treating DEA's 2025 conclusion as an undisputed jurisdictional fact. The Government's own evidence establishes that DEA accepted the claim, referred it, maintained the matter on the judicial-forfeiture track for years, and began the process of returning the property after the United States Attorney declined forfeiture. At a minimum, those facts present a substantial statutory dispute concerning DEA's authority to resurrect the administrative forfeiture process.

Accordingly, the Court should reject Defendants' contention that Tyler's December 2021 claim can simply be treated as though it never existed.

### C. Section 983(e) Does Not Bar Tyler's Challenge Because He Is Not Claiming Lack of Notice; He Challenges DEA's Authority to Forfeit the Property After Accepting His Claim

Defendants contend that 18 U.S.C. § 983(e) forecloses this action because Tyler admittedly received notice of the seizure and administrative-forfeiture proceeding. See Defs.' Mem. at 7–10. Section 983(e)(5) provides that a motion under that subsection is the "exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e)(5). And § 983(e)(1) authorizes relief where a person entitled to notice did not receive adequate notice in time to file a claim. The statute therefore unquestionably limits post-forfeiture challenges based upon defective notice.

But that is not the substance of Tyler's claim.

Tyler does not contend that DEA failed to notify him of the seizure. He acknowledges receiving notice and, in response to that notice, caused a claim to be submitted before the deadline.

DEA received that submission on December 23, 2021, expressly accepted it, and referred the matter to the United States Attorney's Office for judicial forfeiture. Thus, unlike the ordinary § 983(e) case, Tyler did not fail to act after receiving notice and later attempt to reopen a completed administrative forfeiture. He acted upon the notice, and DEA itself treated that action as sufficient to stop the administrative process.

The Sixth Circuit decisions cited by the Government therefore arise in a materially different procedural posture. In *United States v. King*, 442 F. App'x 212, 213 (6th Cir. 2011), and *Matthews v. Drug Enforcement Administration*, 629 F. App'x 723, 725–26 (6th Cir. 2015), the claimants received adequate notice but did not successfully invoke the procedures necessary to halt the administrative forfeiture. The Sixth Circuit consequently rejected attempts to use the courts to obtain merits review of a completed forfeiture after the prescribed administrative process had not been properly invoked. See also *Yates v. United States*, 501 F. App'x 499, 500–01 (6th Cir. 2013).

Tyler's case is different in a critical respect. DEA did not proceed administratively after receiving his submission. It expressly stated that "[t]he claim has been accepted," referred the matter to the Northern District of Ohio, and treated the administrative proceeding as suspended. The Government then retained the case on the judicial-forfeiture track for more than three years before the United States Attorney declined to pursue forfeiture and DEA began the process of returning the currency.

Tyler is therefore not asking the Court to review whether the $32,480 was properly subject to forfeiture on the merits. He is challenging whether DEA possessed statutory authority to complete an administrative forfeiture at all after it had accepted his claim and the Government had failed to commence the judicial proceeding required by § 983(a)(3).

That distinction is consistent with the Sixth Circuit's recognition that federal courts do not ordinarily review the merits of an administrative forfeiture determination, but may examine whether the Government complied with the procedures governing forfeiture. See *King*, 442 F. App'x at 213.The Government itself acknowledges that distinction, stating that a district court may review 'the procedures followed' even though it may not reconsider the substantive merits of the forfeiture. See Defs.' Mem. at 6–7.

Here, Tyler's challenge is procedural and statutory at its core. Section 983(a)(3) directed what the Government was required to do after DEA accepted Tyler's claim: commence judicial forfeiture within ninety days, obtain a statutory extension, or return the property. If it failed to do so, § 983(a)(3)(B) provides that the property "shall" be released and that the Government "may not take any further action to effect the civil forfeiture of such property" in connection with the same underlying offense.

Defendants' interpretation of § 983(e) would permit an anomalous result. The Government could accept a timely claim, suspend administrative forfeiture, refer the matter for judicial proceedings, disregard § 983(a)(3)'s ninety-day deadline, and then insulate that failure entirely from judicial review merely by issuing an administrative declaration of forfeiture years later. Section 983(e)(5) should not be read to transform the Government's own allegedly unauthorized declaration into the source of immunity from review of the statutory violation that preceded it.

The distinction is especially important because CAFRA expressly provides consequences for the Government's failure to satisfy § 983(a)(3). Congress did not merely require the Government to return the property; it prohibited "any further action" to effect civil forfeiture based upon the same offense. 18 U.S.C. § 983(a)(3)(B). DOJ's own forfeiture guidance recognizes the mandatory nature

of CAFRA's deadlines and the serious consequences that follow when the Government fails to comply.

Accordingly, Tyler's acknowledgment that he received the original seizure notice does not answer the statutory question presented by this case. Notice explains how the proceeding began. It does not determine whether DEA had authority to return to administrative forfeiture more than three years after accepting Tyler's claim and referring the matter for judicial forfeiture.

At minimum, the Government has not demonstrated at this stage that § 983(e) deprives this Court of jurisdiction to consider whether DEA complied with the mandatory procedures and limitations imposed by § 983(a)(3). Defendants' request for dismissal under Rule 12(b)(1) should therefore be denied.

### D. <u>The Sixth Circuit's Strict-Compliance Cases Do Not Resolve Whether DEA Could Retroactively Nullify Tyler's Accepted Claim After § 983(a)(3)'s Deadline Expired</u>

Defendants rely heavily upon United States v. 0.40401694 Bitcoin (BTC) Seized from Binance User ID 36895141, No. 25-5611, 2026 WL 228831 (6th Cir. Jan. 28, 2026), and United States v. $31,000.00 in U.S. Currency, 872 F.3d 342 (6th Cir. 2017), for the proposition that strict compliance with federal forfeiture claim requirements is necessary to establish statutory standing. Defs.' Mem. at 6, 8.Those decisions establish an important rule concerning compliance with claim requirements, but they do not resolve the materially different question presented here.

In *$31,000.00 in U.S. Currency*, 872 F.3d at 347–49, the Sixth Circuit addressed claims filed in an already-pending judicial forfeiture action and the requirements imposed by Supplemental Rule G of the Federal Rules of Civil Procedure. The court distinguished constitutional standing from "statutory standing" and explained that a claimant seeking to participate in a judicial forfeiture action

generally must comply with Rule G's verified-claim requirements. The court stated that deviation from those procedural requirements can deprive a claimant of statutory standing to contest the judicial forfeiture.

The Sixth Circuit's recent decision in *0.40401694 Bitcoin* likewise arose from an existing judicial forfeiture action. There, the interested parties failed to timely file claims satisfying Supplemental Rule G's verification requirements, and the district court struck their claims. The Sixth Circuit affirmed, emphasizing the importance of verification and compliance with the procedures governing claims filed in judicial forfeiture litigation. See *United States v. 0.40401694 Bitcoin (BTC) Seized from Binance User ID 36895141*, No. 25-5611, 2026 WL 228831, at *2–4 (6th Cir. Jan. 28, 2026) (not recommended for publication).

Tyler's case arises at an earlier and fundamentally different stage of the CAFRA process.

Tyler is not attempting to intervene belatedly in a judicial forfeiture action after failing to comply with Supplemental Rule G. No judicial forfeiture action was ever filed against his $32,480. Instead, Tyler timely submitted a claim directly to DEA during the administrative forfeiture proceeding. DEA received it before the deadline, treated it as sufficient, expressly advised Tyler that "[t]he claim has been accepted," suspended the administrative process, and referred the matter to the United States Attorney for commencement of judicial forfeiture. See Regis Decl. ¶¶ 4(d)–(e), Ex. 5.

That distinction matters because the governing administrative regulation expressly addresses the possibility that DEA may receive an otherwise timely but defective claim. Under 28 C.F.R. § 8.10(g), if the seizing agency determines that an otherwise timely claim does not satisfy the requirements of § 8.10(b), the agency may notify the claimant of the defect and allow a reasonable

time to cure it. If the defect is not cured within the period allowed by the agency, only then does the regulation provide that the claim "shall be void" and that forfeiture may proceed as though no claim had been submitted. 28 C.F.R. § 8.10(g).

DEA made no such determination when Tyler's claim arrived. Instead, it treated the submission under § 8.10(e), the provision governing claims sufficient to suspend administrative forfeiture and require referral to the United States Attorney.

The Government's reliance upon $31,000.00 and 0.40401694 Bitcoin therefore skips the critical intermediate question: what is the legal effect of DEA's own acceptance and referral of a timely administrative claim, followed by the Government's failure to institute judicial forfeiture within CAFRA's ninety-day period?

Neither Sixth Circuit case cited by Defendants involved an agency that accepted an administrative claim, advised the claimant that it had been accepted, referred the matter for judicial forfeiture, allowed the ninety-day period to expire, retained the matter for more than three years, began the process of returning the property, and only then attempted to declare the original claim void retroactively.

Nor did those cases hold that the Government may disregard the consequences expressly imposed by § 983(a)(3)(B) after the Government itself has treated a claim as sufficient to trigger the judicial-forfeiture process.

Indeed, *0.40401694 Bitcoin* reinforces why the distinction matters. The Sixth Circuit emphasized that verification serves a substantive purpose by assuring that the person asserting the claim has a genuine interest in the property. Here, however, there was never any uncertainty about whose property interest was being asserted. The claim identified Leonard Tyler, Jr. as the claimant,

identified the $32,480, described his asserted interest in the currency in the first person, and bore his name on the signature line. DEA itself acknowledges that nothing on the face of the claim indicated that another person had completed or signed it. Regis Decl. ¶ 4(d).

More importantly, once DEA accepted that submission and referred it, the dispute was no longer limited to whether the claim form was technically deficient. The Government became subject to the separate statutory obligation imposed by § 983(a)(3). Congress required the Government either to commence judicial forfeiture within ninety days, obtain a permissible extension, or return the property. When it failed to do so, § 983(a)(3)(B) supplied an express consequence: the property was to be released and further civil-forfeiture action based upon the same offense was prohibited.

Defendants' proposed application of the strict-compliance cases would effectively make CAFRA's ninety-day protection operate only against the claimant and not against the Government. The Government could insist upon strict compliance by claimants while avoiding strict compliance with its own statutory deadline whenever the agency later identified a defect it had overlooked when accepting the claim. Nothing in the Sixth Circuit cases cited by Defendants authorizes that asymmetrical result.

Nor is Tyler asking the Court to excuse an untimely claim or permit substantial compliance in an ongoing judicial forfeiture action. His argument is narrower. DEA actually received the submission on time; DEA treated it as a claim; DEA affirmatively accepted it; DEA referred it to the prosecuting office; and the Government thereafter failed to perform what § 983(a)(3) required within ninety days. The later determination that Tyler had directed another person to sign the form presents a question concerning the consequences of the original defect, but it does not establish as a matter of law that DEA could erase years of completed agency action and revive administrative forfeiture

after the statutory deadline had passed.

The Government's own regulations further undermine such a categorical result. Section 8.10(g) does not provide that every defect automatically renders an otherwise timely submission nonexistent from the moment of receipt. Instead, it authorizes the agency to identify the deficiency and permit cure, and provides that the claim becomes void if the requirements are not satisfied within the time allowed. DEA never invoked that procedure while Tyler could have cured the signature issue. Instead, DEA accepted the claim and referred the matter for judicial forfeiture.

Thus, Tyler does not ask this Court to disregard *$31,000.00 in U.S. Currency* or *0.40401694 Bitcoin*. Those cases should be applied to the circumstances they actually addressed: compliance with claim requirements in judicial forfeiture proceedings. They do not answer whether an administrative agency may undo its own acceptance of a timely claim after the Government failed to comply with CAFRA's separate ninety-day mandate.

For that reason, Defendants' strict-compliance authorities do not establish that Tyler's action must be dismissed.

### E. At Minimum, the Government's Own Evidence Presents a Merits Dispute That Cannot Be Resolved as a Jurisdictional Fact Under Rule 12(b)(1)

Even if the Court does not conclude at this stage that DEA's acceptance of Tyler's claim triggered § 983(a)(3)'s mandatory consequences, dismissal under Rule 12(b)(1) is nevertheless inappropriate because the Government's jurisdictional theory is intertwined with the merits of Tyler's statutory challenge.

The Government characterizes its motion as a factual attack on subject-matter jurisdiction and therefore asks the Court to consider the Regis Declaration and determine that Tyler never filed

a legally valid claim. See Defs.' Mem. at 4–5. But the Sixth Circuit has cautioned that a district court should not use the procedures governing a factual Rule 12(b)(1) attack to decide the merits of a federal claim where the jurisdictional question and the merits are intertwined. See *Gentek Building Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Rather, where resolution of the jurisdictional question depends upon resolution of the federal claim itself, the plaintiff must receive the procedural protections applicable to a merits determination.

That principle applies here. The alleged jurisdictional fact identified by Defendants—whether Tyler filed a cognizable claim—is also central to the merits of Tyler's CAFRA challenge. Tyler contends that DEA received and accepted his timely claim, terminated the administrative-forfeiture process, referred the matter for judicial forfeiture, and thereby subjected the Government to § 983(a)(3)'s ninety-day requirement. Defendants contend that the signature defect rendered the submission a legal nullity from inception notwithstanding DEA's acceptance and referral.

That is not merely a preliminary fact unrelated to Tyler's cause of action. It is the central statutory dispute the Court is being asked to decide.

Moreover, the material historical facts are largely established by the Government's own evidence. DEA admits that the submission was timely received on December 23, 2021; that it contained Tyler's name and asserted his interest in the property; that DEA accepted the claim and referred the matter to the United States Attorney's Office; and that the matter remained there until that Office declined forfeiture in April 2025. See Regis Decl. ¶¶ 4(d)–(h). DEA further admits that it did not declare the claim defective until May 2025, when it rescinded the decision to return the property and administratively forfeited the currency. *Id.* ¶¶ 4(i)–(j).

The dispute therefore concerns the legal consequences of those facts. Whether DEA's later discovery of the signature issue permitted the agency retroactively to nullify its earlier acceptance and avoid the consequences of § 983(a)(3) is a question of statutory interpretation and the legality of DEA's conduct. It should not be resolved by simply accepting DEA's later administrative characterization as a jurisdictional fact.

The Sixth Circuit's distinction between facial and factual jurisdictional attacks does not permit a defendant to obtain a merits determination under Rule 12(b)(1) merely by labeling the disputed statutory issue "jurisdictional." See *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Accordingly, even if the Court determines that additional development is necessary concerning the legal effect of Tyler's December 2021 submission, the appropriate result is not dismissal for lack of subject-matter jurisdiction. The Government's motion should be denied so that Tyler's statutory claim may be resolved under the procedures applicable to the merits.

### F. Tyler Has Stated a Cognizable Claim for Relief Based on the Government's Failure to Comply With CAFRA

Tyler's Complaint presents a cognizable statutory challenge, not merely a collateral attack on the merits of a completed administrative forfeiture. It alleges that DEA accepted a timely claim, referred the matter for judicial forfeiture, and that the Government thereafter allowed § 983(a)(3)'s statutory deadline to expire without filing a judicial forfeiture complaint or returning the property.

Those allegations are supported by the Government's own evidence, which shows that DEA timely received and accepted the claim, referred it to the United States Attorney's Office, and did not declare it defective until after the United States Attorney declined forfeiture and DEA began the

return process. DEA acknowledges that Tyler's submission was timely received on December 23, 2021; that DEA accepted the claim and referred it to the United States Attorney's Office; that the United States Attorney did not decline forfeiture until April 2025; and that DEA initially began the process of returning the $32,480.00. Only thereafter did DEA declare the claim defective and complete an administrative forfeiture.

As discussed above, § 983(a)(3) requires the Government, once a qualifying claim is filed, either to timely commence judicial forfeiture or return the property, and imposes consequences when it fails to do so.

Tyler therefore alleges a concrete statutory violation: that the Government failed to comply with the mandatory procedures triggered by DEA's acceptance and referral of his claim and later attempted to accomplish administratively what CAFRA no longer permitted it to do.

Defendants may ultimately prevail on their contention that the signature defect prevented § 983(a)(3) from attaching. But that contention presents the very legal dispute at the heart of this case. It does not establish that Tyler's federal claim is so insubstantial or wholly devoid of merit that the Court lacks subject-matter jurisdiction to consider it.

Nor should Tyler's *pro se* Complaint be read more narrowly than its substance permits. Liberally construed, the Complaint challenges DEA's authority to forfeit the currency after it had accepted his claim and after the Government failed to commence judicial forfeiture within the statutory period. That presents a cognizable federal question concerning the operation of CAFRA and the statutory limits governing federal civil forfeiture.

Accordingly, Tyler has stated a sufficient basis for the Court to consider whether DEA's May 2025 administrative forfeiture was authorized by law. Defendants' Motion to Dismiss should therefore be denied.

## V. CONCLUSION AND PRAYER FOR RELIEF

For the above and foregoing reasons, Plaintiff Leonard Tyler, Jr. respectfully requests that the Court deny Defendants' Motion to Dismiss.

DEA timely received and accepted Tyler's claim, referred the matter for judicial forfeiture, and thereafter treated the administrative forfeiture process as suspended. The Government did not file a judicial forfeiture complaint within the period prescribed by 18 U.S.C. § 983(a)(3), and the United States Attorney ultimately declined forfeiture. DEA then began the process of returning the $32,480.00 before later attempting to treat Tyler's previously accepted claim as though it had never existed.

Whether CAFRA permitted DEA to revive the administrative forfeiture process under those circumstances presents a substantial statutory question that should not be resolved by characterizing DEA's 2025 determination as an undisputed jurisdictional fact.

Accordingly, Tyler respectfully requests that the Court deny Defendants' Motion to Dismiss and permit this action to proceed so that the legality of DEA's forfeiture may be determined on the merits. Tyler further requests all other relief to which he may be entitled.

Respectfully submitted,

Dated: August 27, 2026

LEONARD TYLER, JR.
REG. NO. 60750-060
FCI Cumberland
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
CUMBERLAND, MD 21501

## VI. CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026, a true and correct copy of the foregoing Plaintiff Leonard Tyler, Jr.'s Response in Opposition to Defendants' Motion to Dismiss was served upon counsel for Defendants by United States mail, postage prepaid, addressed as follows:

James R. Bennett II
Assistant United States Attorney
Office of the United States Attorney
Northern District of Ohio
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113

LEONARD TYLER, JR.